UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ANTHONY V.,

                       Plaintiff,

          v.                                          **DECISION AND ORDER**
                                                                  23-CV-472-A

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

                       Defendant.
_____

## I.    INTRODUCTION

Plaintiff Anthony V. brings this action against the Commissioner of Social Security (hereinafter the "Commissioner"), seeking review of the Commissioner's determination denying Plaintiff Supplemental Security Income (SSI) under the Social Security Act. Plaintiff (Dkt. # 4) and the Commissioner (Dkt. # 7) have filed cross-motions for judgment on the pleadings. Plaintiff's sole contention is that the Administrative Law Judge ("ALJ") failed properly to evaluate Plaintiff's subjective complaints, resulting in an RFC that was not supported by substantial evidence. For the reasons set forth below, the Plaintiff's motion is **DENIED**, and the Commissioner's motion is **GRANTED**.

### A. Procedural History

On May 5, 2020, Plaintiff filed an application for SSI alleging disability beginning on January 1, 2017. Plaintiff's claim for disability was due to the following

illnesses, injuries, and conditions: varicose veins; pain in feet and legs; numbness in feet and legs; difficulty standing for long periods; memory loss; enlarged testicles; and seizures. T. 83.[1]

Plaintiff's claim was initially denied on January 14, 2021, and upon reconsideration on June 28, 2021. T. 81, 91. Plaintiff requested a hearing, and on September 1, 2022. Plaintiff, represented by counsel, appeared and testified at a hearing held before ALJ Tracy LaChance. T. 37-80. A vocational expert also testified at the hearing.   T. 74. The ALJ issued an unfavorable decision on November 16, 2022. T. 15-32.  On April 5, 2023, the Appeals Council denied Plaintiff's request for review, *see*, T. 1-7, and this action followed.

**B.  Factual Background**

   **1.  Medical Evidence:**

Plaintiff was born on March 30, 1966. (T. 26).  He has a 9th grade education, (T. 46), and relevant work history as a material handler. (T. 25).

In January of 2021, two medical doctors reviewed Plaintiff's file as it existed on that date, and each and opined that there was insufficient evidence to make a disability determination. (T. 87-88; T.88-89).

On June 18, 2021, Plaintiff underwent a psychiatric consultative examination with Dr. Janine Ippolito, Psy.D. (T. 576-579). Plaintiff reported various symptoms

---

[1] References herein preceded by "T" are to consecutively paginated, Bates-stamped pages within the administrative transcript of official proceedings in this case, set forth as Dkt. #3 on the Docket.

including difficulty falling asleep, decreased appetite, weight loss, and depressive symptoms characterized by sad and depressed mood and mild irritation. Plaintiff reported that he felt these symptoms were exacerbated by his physical limitations and inability to work, and he endorsed some short-term memory problems and difficulty concentrating. (T. 576-577). On mental status exam, attention and concentration were mildly impaired due to limited education and difficulty with math skills; recent and remote memory skills were impaired; cognitive functioning was estimated to be low average; and insight and judgment were fair to good. (T. 577-578). Dr. Ippolito opined that Plaintiff could understand, remember, and apply complex directions and instructions and regulate emotions, control behavior, and maintain well-being with mild limitations, due to his emotional distress and suspected learning difficulties. Dr. Ippolito further opined that the results of the examination appear to be consistent with psychiatric problems not significant enough to interfere with Plaintiff's daily functioning. (T. 578).

On June 18, 2021, Plaintiff underwent an internal medicine consultative examination with Dr. John Schwab, D.O. (T. 581-586). Plaintiff reported having problems with his veins in his right lower extremity, that bothered him if he stood too long; he could walk three to four blocks. (T. 581). On physical exam, Plaintiff could not walk on his toes but could walk on his heels; could squat to 25%; and had significant varicose veins in his right lower extremity from his foot to his knee. (T. 581-583). Dr. Schwab diagnosed varicose veins of the right lower extremity and opined that Plaintiff had a mild restriction to prolonged walking and climbing stairs

and ladders. (T. 583). An x-ray of the cervical spine showed degenerative changes. (T. 585), and an x-ray of the lumbosacral spine showed moderate degenerative changes at the L4-S1 levels and mild degenerative changes at the L2-L4 levels. (T. 586).

Dr. D. Brauer, M.D. reviewed Plaintiff's file and opined that Plaintiff could perform medium exertion work with frequent climbing of ramps, stairs, ladders, ropes, and scaffolds and stooping. (Tr. 106-108).

Dr. L. Dekeon, Ph.D. also reviewed Plaintiff's file and opined that Plaintiff's mental impairments were non-severe and caused mild limitations in the ability to understand, remember, or apply information, concentrate, persist, or maintain pace, and adapt or manage himself, and no limitations in the ability to interact with others. (T. 102-104).

Plaintiff's treatment records reveal that in 2018, Plaintiff underwent a check-up at the Community Health Center of Buffalo after reporting, among other things, numbness and tingling in his legs and feet, and swollen varicose veins in the right leg. (T. 527-528). The numbness and tingling of his legs were due to suspected spinal stenosis and/or alcohol neuropathy; he was referred to GI and urology. (T. 528-529). On October 29, 2018, Plaintiff complained of pain in the right leg, potentially due to constant use of his legs while performing as a drummer. According to Plaintiff, the pain worsened at night and disturbed his sleep; he reported severe varicose veins in the right lower extremity with swelling in the feet and ankle after prolonged standing; he had moderate to severe non-tender, non-

inflamed varicose veins extending up to mid-thigh; he was given compression stockings and referred to vascular surgery. (T. 532).

In January of 2020, Plaintiff underwent an annual exam and reported leg cramps at rest while lying down. (T. 553). There was edema and varicosities of the right lower extremity. (T. 555). Once again, he was referred to vascular surgery, and a venous Doppler was ordered. (T. 556). In March of 2020, Plaintiff complained of leg cramps during a telehealth visit, and compression stockings were prescribed for varicose veins of his right leg. (T. 529-540). In October of 2020, Plaintiff complained of memory loss, aggravated by stress, that was associated with difficulty concentrating and forgetfulness. Plaintiff also complained of suffering from leg cramps for several years. (T. 602). He had severe varicosity in the right lower leg (T. 604), and once again, he was referred to vascular surgery. (T. 605).

During a May 2021 annual exam, Plaintiff reported moderate palpitations with lethargy and shortness of breath; he reported exercising sporadically. (T. 596). He once again had severe varicosity in the right lower leg. (T. 598). An ECG was ordered; he was referred to cardiology and hematology. (T. 599-601). In June of 2021, Plaintiff reported working to improve his exercise routine (T. 588) and was assessed with anemia and referred to GI; a venous Doppler was ordered; his medications included Hydroxyzine, Ammonium Lactate, and medical compression stockings. (Tr. 594-595).

In September of 2021, Plaintiff was seen for iron deficiency anemia. Plaintiff reported that he was not taking his medication and was unable to perform work-

5

related activities; he reported that he had not tried anything to alleviate symptoms; he reported irregular heartbeat, loss of appetite, and pain all over and numbness in his feet, at times. (T. 658). He exhibited moderate varicosity of the lower legs. (T. 660). An ECG and abdominal ultrasound were ordered; he was referred to cardiology; he was encouraged to take anti-hypertensive as directed; and he was encouraged to abstain from alcohol use. (T. 660-662).

In November of 2021, Plaintiff complained of lower back pain; he noticed this with bending, exercising, sitting, twisting, and walking; his pain had worsened; the pain radiated to his legs; he reported limited ROM. (T. 665). He had limited spine ROM with pain. (T. 667). Diclofenac Sodium was prescribed. (T. 667). Also in November of 2021, Plaintiff was brought to the ER by his sister who advised that Plaintiff had been lying in the basement not eating anything, feeling fatigued, and drinking; she reported that he had some memory issues, which were worsening. (T. 683). He complained of fatigue and dizziness, and during an examination he was oriented to place and person, but not time. (T. 685). He was given an IV with saline, folic acid, and Thiamine supplement; he was found to have low magnesium, so this was replaced; he was found to have an elevated lipase level. (T. 686). A CT scan of Plaintiff's abdomen and pelvis revealed cholelithiasis, and he was given a short course of Benzodiazepine to help with alcohol withdrawal. (T. 690-691).

**2. Hearing Testimony:**

At the hearing, Plaintiff testified extensively regarding a seizure disorder and continued seizure activity. (T. 47-49; 52-69). He also testified about: his ability to sit

and stand for periods of time (T. 53-54); his ability to walk distances (T. 54); his ability go up and down stairs (T. 54-55); his ability to bend and scoop and squat and kneel (T. 55); his ability to lift 50-60 lbs. (T. 56); and his ability to get out of a chair. (T. 55-56). At the hearing, a vocational expert answered a series of hypothetical questions posited to her by the ALJ. (T. 75-78).

### 3. The ALJ's Decision:

Using the five-step sequential analysis, the ALJ found the Plaintiff had not engaged in substantial gainful activity since May 5, 2020, the application date. (T. 20). The ALJ also determined that Plaintiff had the following severe impairments: degenerative changes of the spine and varicose veins. (T. 20). Notably, in rejecting the extensive testimony provided by the Plaintiff at the hearing regarding seizures, the ALJ stated as follows:

> The record does not support this testimony. Prior treatment notes, from 12 years ago, reference seizure activity related to alcohol use. At the consultative examination, he denied seizure activity. He did not seek any treatment or make any regular complaints of seizure activity. After the hearing, the claimant was given time to submit additional records regarding seizures and medication management; no such information was forthcoming. The record does not document a diagnosis of seizure disorder or otherwise show that the claimant carried his burden in establishing this as a medically determinable impairment. (T. 20-21).

The ALJ further found that none of Plaintiff's impairments met or equaled the criteria for any impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listings). (T. 22). The ALJ then determined that despite Plaintiff's impairments, he retained the residual functional capacity ("RFC") to perform medium work, except he

is limited to standing and walking 6 hours per day and he can frequently climb and stoop. (T. 22). While the ALJ found that Plaintiff could not perform his past relevant work (T. 25), the ALJ nevertheless relied on the vocational expert's testimony and concluded at step five that Plaintiff was able to perform work existing in significant numbers in the national economy, including work as a coffee maker, hospital cleaner and auto detailer. (T. 26). Accordingly, the ALJ concluded that Plaintiff was not disabled and, therefore, not eligible for SSI under the Act from May 5, 2020, the application date, through November 16, 2022, the date of the ALJ's decision. (T. 38).

## II.   LEGAL STANDARD

### A. Standard of Review

In reviewing a final decision of the SSA, a district court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotation marks and citation omitted). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. It is not this Court's function to make a *de novo* determination as to whether the claimant is disabled; rather, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn" to determine whether the SSA's findings are supported by substantial evidence. *Id*.

"The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." *42 U.S.C. § 405(g)*; *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982) ("Congress has instructed ... that the factual findings of the Secretary, if supported by substantial evidence, shall be conclusive."). "Under this 'very deferential standard of review,' 'once an ALJ finds facts, we can reject those facts only if a reasonable factfinder would have to conclude otherwise.'" *Bonet ex rel. T.B. v. Colvin*, 523 Fed.Appx. 58, 58-59 (2d Cir. 2013) (italics omitted) (quoting *Brault v. Social Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012). The issue is not whether substantial evidence supports the claimant's argument, but "whether substantial evidence supports the ALJ's decision." *Bonet ex rel. T.B.*, 523 Fed.Appx. at 59 (italics omitted). "In determining whether the agency's findings are supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Talavera*, 697 F.3d at 151 (internal quotations omitted).

### B. Legal Standard to Determine Disability

To determine whether a person claiming to be disabled is eligible for benefits under the Act, the ALJ follows a familiar five-step sequential evaluation, determining: (1) whether the claimant is engaged in substantial gainful work activity; (2) whether the claimant has any "severe" impairments that significantly restrict his or her ability to work; (3) whether the claimant's impairments meet or medically equal the criteria of any listed impairments in Appendix 1 of Subpart P of Regulation No. 4 (the

"Listings"), and if they do not, what the claimant's residual functional capacity ("RFC") is; (4) whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work; and (5) whether the claimant's RFC permits him or her to perform alternative substantial gainful work which exists in the national economy in light of her age, education, and work experience. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986); *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999); *see also* 20 C.F.R. §§ 404.1520 and 416.920(a).

The ALJ has a "duty to investigate the facts and develop the arguments both for and against granting benefits." *Sims v. Apfel*, 530 U.S. 103, 111, 120 S.Ct. 2080, 147 L.Ed.2d 80 (2000) (citation omitted). The ALJ need not, however, recite every piece of evidence that contributed to the decision so long as the record permits a reviewing court the ability to glean the rationale of the ALJ's decision.  *Cichocki v. Astrue*, 729 F.3d 172, 178 n.3 (2d Cir. 2013).

### III.   ANALYSIS

#### A. The ALJ's Did Not Err in Failing Properly to Evaluate Plaintiff's Subjective Complaints, and The ALJ's Determination Is Supported by Substantial Evidence.

Plaintiff's sole contention is that the ALJ failed properly to evaluate Plaintiff's subjective complaints, resulting in an RFC that was not supported by substantial evidence.  Plaintiff's contention lacks merit because "as long as the ALJ provides 'specific reasons' for finding testimony not credible, h[er]] 'credibility determination is generally entitled to deference on appeal.' " *McGonagle v. Kijakazi*, No. 22-637, 2022 WL 17724696, at *1 (2d Cir. Dec. 16, 2022).

Here, the ALJ appropriately rejected what appears to have been Plaintiff's primary complaint at the hearing—*i.e.,* that Plaintiff suffered from frequent and debilitating seizures. In her decision, the ALJ fully and convincingly explained her rationale for the conclusion that the Plaintiff's own treatment history and medical records failed to support his extensive subjective complaints at the hearing regarding seizures. (T. 20-21).  Having determined that Plaintiff did not testify credibly at the hearing, the ALJ was entitled to discount Plaintiff's other subjective complaints of pain.  *See, McDonaugh v. Astrue*, 672 F. Supp. 2d 542, 565 (S.D.N.Y. 2009)(" Where an ALJ decides to discount a claimant's subjective allegations of pain, the reviewing court must defer to that credibility assessment, as long as the ALJ's findings are explained and supported by substantial evidence.").

Moreover, with regard to Plaintiff's other subjective complaints, the ALJ, consistent with SSR 16-3p and the regulations, considered the intensity and persistence of Plaintiff's symptoms and determined the extent they limited his ability to perform work following the two-step process identified by the Commissioner, where she first determined that Plaintiff suffered from two severe impairments—*i.e.*, degenerative changes of the spine and varicose veins—and then analyzed whether they caused any work-related limitations by considering Plaintiff's hearing testimony, statements made by his medical sources, objective studies, reported activities, and treatment records from his mental and physical examinations. *See* SSR 16-3p, 2017 WL 5180304, at *3; 20 C.F.R. § 416.929; *see also*, T. 22 (citing to 20 C.F.R. § 416.929 and SSR 16-3p).  The ALJ also considered the objective findings, opinion

evidence and prior administrative findings as well as Plaintiff's activities of daily living. After considering such factors, the ALJ found that Plaintiff's subjective allegations were not entirely consistent with the medical evidence and other evidence. T. 23.

The ALJ was entitled to rely on objective findings in the record in discounting Plaintiff's subjective complaints. For instance, the ALJ cited to treatment notes from Plaintiff's visit to Timothy McDaniel, M.D., at Community Health Center of Buffalo (CHCB) from April and October 2018. T. 23 (citing T. 527, 532). During those visits, Plaintiff exhibited normal gait and no clubbing, cyanosis or edema in his extremities, despite moderate to severe varicose veins in his right lower extremity. T. 527, 532. The record also includes a visit to CHCB in May 2018, wherein Plaintiff displayed a steady fluid gait. T. 530.  Furthermore, the ALJ cited (T. 23) to treatment notes from Plaintiff's visits to Urban Family Practice in January and March 2020, during which Plaintiff reported he was: feeling well, not taking any medication, exercising sporadically, engaging in moderate physical activity, and having mild cramping pain in his leg. T. 553. He also exhibited normal gait, despite swelling and varicosities of his right lower extremity. T. 555. The ALJ also cited (T. 23-24) medical visits in 2021 during which Plaintiff reported he was feeling well compared to his last visit and he was exercising. T. 596. He also exhibited normal gait, no swelling in both lower limbs, no instability in his lower limbs, full spine strength, full spine range of motion and moderate varicosity in his lower limbs. T. 660.  Between October 2020 and

November 2021, Plaintiff repeatedly exhibited no swelling in both lower limbs, no instability in his lower limbs and full spine strength. T. 660, 604, 590.

Turning to the opinion evidence and prior administrative findings, the ALJ cited to the June 2021 consultative examination with Dr. Schwab, during which Plaintiff exhibited normal gait and stance, he could walk on his heels, used no assistive device, did not need help changing for the examination or getting on and off the examination table and he could rise from a chair without difficulty. T. 582. Such examination revealed that Plaintiff had full flexion, extension and full rotary movement bilaterally of his cervical and lumbar spine, full range of motion in his upper and lower extremities, full strength in his upper and lower extremities, no evidence of subluxations,  contractures, ankylosis or thickening and no swelling or effusion, with stable and nontender joints. T. 582-583. He also exhibited no swelling, cyanosis, clubbing or muscle atrophy, despite significant varicose veins in his right lower extremity. T. 583. Dr. Schwab opined Plaintiff had a mild restriction to prolonged walking and climbing stairs and ladders. T. 583. Also, in June 2021, SAMC Dr. Brauer found Plaintiff could perform medium work except he could frequently climb ramps, stairs, ladders, ropes and scaffolds and frequently stoop. T. 107. The ALJ reasonably found Dr. Schwab's opinion and the findings of Dr. Brauer persuasive because they are well supported by and consistent with the evidence of record in its totality, neither the opinion and findings is inconsistent with any other opinion statement the record, and both Dr. Schwab and the SAMC are familiar with program rules and evidentiary requirements. T. 25; *see Lowry v. Astrue*, 474 F. App'x

801, 805 (2d Cir 2012)(summary order) (affirming ALJ's evaluation of subjective complaints, where the ALJ pointed in part to two State agency opinions that did not support a finding of disability).

Additionally, the ALJ properly considered that Plaintiff's described activities of daily living—which included: light cooking, shopping, cleaning, laundry, showering, bathing, dress independently, managing his own money, using public transportation, staying in touch with friends and family, participating in hobbies, such as drawing, reading, listening to music, watching television, playing drums, exercising, remaining active, and the ability to lift 50-60 pounds—were all contrary to Plaintiff's allegations regarding his limitations in functioning. T. 24-25.

An ALJ may reject Plaintiff's subjective allegations when they are inconsistent with evidence of Plaintiff's daily functional ability. *See Wolfe v. Comm'r of Soc. Sec.*, 272 F. App'x 21, 22 (2d Cir. Apr. 1, 2008) (ALJ properly discounted claimant's subjective complaints based on her statements about activities); *Cherry v. Comm'r of Soc. Sec. Admin.*, 813 F. App'x 658, 661-62 (2d Cir. 2020) ("Cherry argues that he should not be 'penalized' for continuing to maintain normal activities of daily living despite his impairments. However, the ALJ properly took into account Cherry's reported activities of daily living, as required by the regulations."); *Candy R. v. Comm'r of Soc. Sec.*, No. 6:23-CV-06608-EAW, 2024 WL 3886221, at *6 (W.D.N.Y. Aug. 21, 2024)("[p]laintiff's complaints of disabling symptoms were inconsistent with her ability to do laundry and some cleaning, cook, shop, attend to her personal

needs, do crafts, listen to the radio, watch television, use social media, care for her dogs, socialize with her family and friends, and babysit her grandson.").

Here, the ALJ's resolution of the evidentiary conflicts in Plaintiff's testimony and his medical history was properly within her discretion as the finder of fact and was not patently unreasonable, and this Court concludes that, "substantial evidence supports the ALJ's finding that [Plaintiff]'s subjective complaints of pain were insufficient to establish disability." *Poupore v. Astrue*, 566 F.3d 303, 307 (2d Cir. 2009). Accordingly, this Court rejects Plaintiff's argument and affirms the ALJ's decision.

### IV.     CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (Dkt. # 4) is **DENIED** and the Commissioner's motion for judgment on the pleadings (Dkt. # 7) is **GRANTED**. Plaintiff's complaint is **DISMISSED** in its entirety with prejudice. The Clerk of the Court is directed to close this case.

**IT IS SO ORDERED**.

       *s/Richard J. Arcara*
       HONORABLE RICHARD J. ARCARA
       UNITED STATES DISTRICT COURT

Dated:  September 27, 2024
       Buffalo, New York